UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20669-CR-SCOLA/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUIS ESNAY HERNANDEZ-GONZALEZ,

    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO RELEASE SEIZED ASSETS**

This matter is before the Court on Luis Esnay Hernandez-Gonzalez's ("Defendant") Motion to Release Seized Assets ("Motion"). [D.E. 65].[1] Specifically, the Defendant seeks three claims for relief: (1) Defendant seeks the return of $5,492,535.17 pursuant to *Luis v. United States*, 136 S. Ct. 1083 (2016) because the funds are allegedly substitute assets, (2) if the Court declines the return of the aforementioned amount, Defendant claims he is entitled to at least $500,000 in order to pay for his counsel of choice, and (3) the forfeiture of over $21 million in cash violates the Eighth Amendment Excessive Fines Clause of the United States Constitution. Having carefully considered the Defendant's Motion [D.E. 65], the Government's response in opposition [D.E. 83], and the Defendant's reply [D.E. 87],

---

[1] On May 31, 2017, the Honorable Robert N. Scola referred Defendant's Motion to the undersigned Magistrate Judge for disposition. [D.E. 66].

1

the Court recommends that the Defendant's Motion be **DENIED** for the reasons set forth below.

## I. BACKGROUND

On or about March 24, 2017, a federal grand jury in Miami, Florida returned a Superseding Indictment charging the Defendant with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), one count of conspiracy to traffic in marijuana in violation of 21 U.S.C. § 846, nine counts of money laundering to avoid currency reporting requirements in violation of 18 U.S.C. § 1956(a)(1)(B)(ii), five counts of money laundering in amounts over $10,000 in violation of 18 U.S.C. § 1957, one count of structuring to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3) & (d)(2), seven counts of causing and attempting to cause a financial institution to fail to file a report required by law as part of a pattern of criminal conduct exceeding $100,000 in a twelve-month time frame, in violation of 31 U.S.C. § 5324(a)(1) & (d)(2), and one count of maintaining a premises for purposes of distribution of marijuana in violation of 21 U.S.C. § 856(a)(1). [D.E. 55].

As part of returning a True Bill, the Grand Jury returned a finding of probable cause for forfeiture of all the assets listed in the Indictment. *Id.* The Superseding Indictment's Forfeiture Allegation Section lists no substitute assets. The assets Defendant requests to have returned are assets for which the Grand Jury (and two magistrate judges) found probable cause of their nexus to the charged offenses.

2

They are forfeitable assets pursuant to 31 U.S.C. § 5317(c), 21 U.S.C. § 853, and 18 U.S.C. § 982(a)(1).

In addition to the Grand Jury finding of probable cause, multiple Southern District of Florida Magistrate Judges found probable cause for seizure of the indicted assets, not including the real properties, for forfeiture. On July 1, 2016, Magistrate Judge Garber found probable cause that Indictment Forfeiture Section Assets 5(c)(1) through 5(c)(8) were involved in violations of 18 U.S.C. § 1956(a)(1) and (h), 31 U.S.C. § 5324(a)(1) and (a)(3), and 21 U.S.C. §§ 841 and 846, and, as a result of these violations, these assets were subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1) and (b), 18 U.S.C. § 982(a)(1) and (b)(1), and 31 U.S.C. § 5317(c) and the procedures provided in 21 U.S.C. §§ 853 and 881(a) and FED R. CRIM P. 41. Similarly, on February 10, 2017, Magistrate Judge White found probable cause for seizure of the assets on the same statutory basis as Magistrate Judge Garber for the remaining assets listed in the Superseding Indictment, not including the real properties.

Defendant is purportedly the president of a business named Advanced Fertilizers Corp ("AFC"); Defendant's wife ("GM") is the president of a company named The Blossoms Experience ("BE"); and Defendant's sister ("SH") is the president of a business named Organic Gardeners Corp ("OGC"). BE and OGC are registered at 7780 NW 169 Terrace, Miami Lakes, FL 33016, Defendant's home address, and AFC is registered at 7207 NW 54 Street, Miami, FL 33166.

From at least April 14, 2005, and continuing through on or about December 13, 2016, Defendant allegedly conducted a large-scale marijuana trafficking organization. In addition to buying and selling marijuana, Defendant purportedly supplied other individuals with equipment for the sole purpose of supporting their marijuana grow operations. And alongside witness testimony, wiretap recordings and text message intercepts allegedly establish that Defendant actively supported marijuana traffickers.

On June 28, 2016, law enforcement officers obtained search warrants and seized a total of $21,970,411 in U.S. currency from Defendant's residence and $665,888.00 in U.S. currency, $42,051.00 in blank money orders, and marijuana from Defendant's business. A majority of the $21,970,411 seized from Defendant's residence was hidden in a secret compartment of the attic and inside the walls. Further, while the warrant for the business was being executed, a MDPD detective and a DEA agent interviewed Defendant. Post-*Miranda*, Defendant purpotedly admitted, *inter alia*, to supporting marijuana traffickers because he needed them to maintain his hydroponics business.

In addition to possessing over $22.5 million in physical currency, from January 2011 to June 2016, Defendant allegedly made structured currency deposits of over $19,178,016 in amounts under $10,000.01 in order to evade the currency reporting requirements of financial institutions. Additionally, from 2010 to 2016, Defendant purportedly purchased approximately 2,415 postal money orders totaling

4

over $2,100,000 in currency in a structured fashion in order to evade the currency reporting requirements of U.S. post offices. The evidence allegedly show that all the currency involved in the structuring activity mentioned herein resulted from Defendant's use of his business as a cover to support marijuana traffickers.

## II.     ANALYSIS

### A.     *Pretrial Restraints on Assets*

Defendant's first argument is that the U.S. Supreme Court's decision in *Luis v. United States* mandates that the Government return $5,492,535.17 million in seized assets. Defendant contends that in preparation of his defense, there have been significant resources for experts and costs totaling over one hundred thousand dollars. Costs moving forward in the next two months will purportedly exceed two hundred thousand dollars. Defendant claims that there are also significant copying costs, the production of trial exhibits, and costs associated with the review of tens of thousands of documents, business records, and items provided in discovery. These costs and expert fees could allegedly approach a sum of five hundred thousand dollars – a figure that Defendant contends is not unreasonable in a case of this size and import. Defendant further asserts that there are currently over one hundred thousand dollars in outstanding payments currently due and an additional fifty thousand dollars in costs the defense wants to immediately accrue, but cannot do so based on the lack of funds available to the defense.

As support, Defendant relies on the Supreme Court's decision in *Luis* and the

5

Sixth Amendment's right to counsel. Defendant argues that the right to counsel is fundamental and that several "commentators describe the right as a 'great engin[e] by which an innocent man can make the truth of his innocence visible.'" *Luis*, 136 S. Ct. at 1089 (citing Amar, Sixth Amendment First Principles, 84 Geo. L.J. 641, 643 (1996); *Herring v. New York,* 422 U.S. 853, 862 (1975)). In other words, Defendant contends that the right to counsel is hollow unless the defense has adequate access to experts and resources to devote the time necessary for a proper defense.

In particular, Defendant claims that he has had the burden of funding three separate defenses, two of which were purportedly short-circuited by the intentional acts of the Government. For example, Defendant alleges that the state court prosecutors decided – less than two weeks away from trial – to transfer the Defendant to this Court. Immediately before the prosecutors acted, the defense was preparing for court hearings, motions, and trials that the Government allegedly never intended to occur. Therefore, Defendant argues that the facts presented demonstrate that the seized funds should be returned, and that this Court has the authority to do so in the interest of fundamental fairness. *See, e.g.*, *United States v. Tardon*, 56 F. Supp. 3d 1309, 1323 (S.D. Fla. 2014).

The Government's response is that the Defendant's reliance on *Luis* is entirely misplaced. *Luis* purportedly held that a defendant has a Sixth Amendment right to use *untainted* assets to secure counsel of choice in a criminal prosecution for reasonable fees. The Government emphasizes that the Supreme Court's analysis

6

was based on an interpretation of 18 U.S.C. § 1345 – a statute that expressly allows pretrial restraint of untainted assets in the context of a parallel civil action for injunctive relief. As such, the Government argues that the Court carefully distinguished untainted assets owned by a defendant from the kind of assets implicated in this case:

> The relevant difference consists of the fact that the property here is untainted; *i.e.,* it belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime.

*Luis*, 136 S. Ct. at 1090. The Government points out that the Court reaffirmed a longstanding principle that the "Government may well be able to freeze, perhaps to seize, assets of the latter, 'tainted' kind before trial." *Id*. These tainted items include "a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime." *Id*. And although the Government suggests that a defendant's ownership interest is important, "[t]he robber's loot belongs to the victim, not to the defendant." *Id*. (citing *Telegraph Co. v. Davenport,* 97 U.S. 369, 372 (1878) ("The great principle that no one can be deprived of his property without his assent, except by the processes of the law, requires . . . that the property wrongfully transferred or stolen should be restored to its rightful owner")).

Furthermore, the Government contends that – in this case – the grand jury found probable cause that the assets listed in the Superseding Indictment were

involved in, traceable to, or proceeds of pending charges. [D.E. 55]. In contrast to *Luis*, the Government argues that the seized assets here are properly restrained at the pretrial stage under a long-established line of Supreme Court decisions that stand for the proposition that directly forfeitable assets cannot be released for attorney's fees. Therefore, the Government believes that the Court should outright decline Defendant's suggestion that tainted assets can or should be made available for attorney's fees or litigation costs.

There is no doubt that the "purpose of freezing assets in this case is to preserve the status quo and prevent those assets from being dissipated or diverted during the pendency of the case." *United States v. Jamie,* 2011 WL 145196, at *1 (S.D. W.Va. 2011). District courts have broad discretion and the authority to release frozen personal assets or lower the amount frozen for an award of attorneys' fees. *See id*.; *see also Commodities Futures Trading Comm'n v. Am. Metals Exh. Corp.,* 991 F.2d 71, 79 (3d Cir. 1993)); *SEC v. Ducluad Gonzalez de Castilla,* 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001). "In determining whether restrained funds should be used to pay attorneys' fees, the Court is instructed to balance the 'government's justification for restraining property with the defendant's legal interest in a full and fair hearing on the merits." *Jamie*, 2011 WL 145196, at *1 (quoting *United States v. Payment Processing Ctr., LLC,* 439 F. Supp. 2d 435, 441 (E.D. Pa. 2006)).

On one hand, the Sixth Amendment is not violated if the Government seizes ill-gotten gains and "refuses to permit the defendant to use them to pay for his

defense." *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 626 (1989); *see also United States v. American Therapeutic Corp.,* 797 F .Supp. 2d 1289, 1293–94 (S.D. Fla. 2011) (denying release of attorney fees in health-care case brought under § 1345 and noting lack of Sixth Amendment right to counsel for civil litigants); *S.E.C. v. Quinn,* 997 F.2d 287, 289 (7th Cir. 1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") (internal citation and citation omitted).

On the other hand, the Court has the authority to release the frozen funds "in the interest of fundamental fairness if wrongdoing is not yet proven and the restrained property is a defendant's only means of securing counsel." *United States v. Petters,* 2009 WL 803482, at *2 (D. Minn. Mar. 25, 2009); *accord Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.,* 67 F.3d 766, 775 (9th Cir. 1995) (district court must exercise discretion in awarding fee applications when wrongdoing is not yet proven); *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 565 (5th Cir. 1987) ( "[T]he court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves."); *Payment Processing,* 439 F. Supp. 2d at 440–41 (although Sixth Amendment does not entitle defendant to release of frozen assets, that rationale "does not merit denying a defendant in a § 1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the § 1345 complaint has been resolved on the merits").

9

Here, the Government's legal reasoning – as it relates to *Luis* – is sound. The holding in *Luis* makes a careful distinction between tainted and untainted assets. The former may well be frozen as a matter of law because the assets do not belong to the Defendant, but the victims. As for untainted assets, the Supreme Court made clear that it "belongs to the defendant, pure and simple." *Luis*, 136 S. Ct. at 1090. To the extent the Defendant relies on *Luis* for the proposition that the Government is mandated to return any frozen assets because of the Sixth Amendment's right to counsel, Defendant's argument misses the mark. There is nothing in *Luis* that imposes that type of per se requirement.

Defendant appears to primarily take issue with the Government's objection to an evidentiary hearing to allow for the Defendant to demonstrate that the assets are in fact not tainted. The dispute between the parties appears to boil down to (1) whether the grand jury indictment obviates the need for any evidentiary hearing, and (2) whether it forecloses any avenue for the Defendant to prove that the assets frozen actually belong to him.

Defendant suggests that the basis for an evidentiary hearing is that he is in the possession of "point of sale" data – that the grand jury never examined – that proves that the frozen assets belong to him. By contrast, the Government argues that binding precedent forecloses any inquiry into whether the frozen assets are tainted or not because of the grand jury's determination of probable cause in connection with the Superseding Indictment.

10

The Government's position is unpersuasive to the extent that the grand jury's findings obviate a defendant – as some sort of per se rule – from *ever* challenging whether assets are tainted or not.  While the Government suggests that there is binding precedent on this question, the Government noticeably fails to refer the Court to any authority as support.  To the contrary, a defendant may challenge a grand jury's determination that the frozen assets "constitute[ ] or [are] derived, directly or indirectly, from gross proceeds traceable to the commission of the [health care] offense," 18 U.S.C. § 982(a)(6), "by making a prima facie showing of a bona fide reason to believe the grand jury erred . . . ."  *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998); *see also United States v. Clark*, 717 F.3d 790, 800 (10th Cir. 2013) ("A hearing should be held 'only upon a properly supported motion by a defendant,' wherein he must (1) 'demonstrate to the court's satisfaction that [ ]he has no assets, other than those restrained, with which to retain private counsel and provide for [him]self and [his] family'; and (2) 'make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets' are forfeitable property.") (citations omitted).

Even if the Court accepted the per se rule proffered by the Government, that fails to address a situation where a grand jury makes a determination of probable cause and evidence later suggests that the frozen funds may not be tainted at all. The Government's position is also unpersuasive because, as other courts have determined, there are circumstances that require an inquiry into frozen assets to

11

safeguard a defendant's Sixth Amendment Rights. In *Jamie*, for example, the Court determined that the defendant had "no other substantial assets to satisfy [its] attorney's submitted fees" and authorized payment of fees necessarily incurred on behalf of the defense team. *See Jamie*, 2011 WL 145196, at *1 at *2.

Yet, the Government is correct that – if an evidentiary hearing was granted – that Defendant would have the *burden of proof* to determine the propriety of the seizure. *See United States v. Kaley*, 579 F.3d 1246, 1257 (11th Cir. 2009) ("The purpose of the hearing would not be to determine guilt or innocence but, rather, to determine the propriety of the seizure. Moreover, in such a hearing, the defendant, as the movant, would have the burden of proof, and the prosecution would thus be saved from having to preview its entire case."). This also means that the Defendant cannot revisit the grand jury's probable cause finding – that the charged crimes were committed – because the scope of the hearing is limited solely to whether the frozen assets are tainted or not. *See Kaley v. United States*, 134 S. Ct. 1090, 1105 (2014) ("If the question in a pre-trial forfeiture case is whether there is probable cause to think the defendant committed the crime alleged, then the answer is: whatever the grand jury decides."). Accordingly, the Court must turn to the question of whether an evidentiary hearing is necessary to safeguard the Defendant's Sixth Amendment rights.

12

### B. *The Sixth Amendment Right to Counsel*

In support of his request for an evidentiary hearing, Defendant argues that he cannot afford to pay his attorneys and that this violates his constitutional rights under the Sixth Amendment. The reason for Defendant's inability to fund his own defense stems from the fact that he has purportedly had to fund three separate legal battles – a state court case, a state court forfeiture matter, and now the Superseding Indictment. Second, Defendant contends that the expansion of this case between the first and second indictment necessitated the hiring of seasoned defense attorneys because of the large expansion of discovery documents. And third, Defendant claims that, the need for experts – unknown at the time of the indictment – has increased tremendously. Therefore, Defendant believes that the financial strain is impeding the success of his defense team and that an evidentiary hearing is necessary to demonstrate that the frozen assets are untainted.

In response, the Government argues that Defendant's contentions are meritless because there is purportedly no Sixth Amendment issue at this time because the Defendant has retained not one but three permanent lawyers of his own choice. According to financial reports, defense counsel has allegedly received at least $167,000 in cash from the Defendant. The Government therefore suggests that the Court should deny the motion to release assets – without an evidentiary hearing – because Defendant already has permanent lawyers advocating on his own behalf.

13

Relatedly, the Government argues that Defendant's motion should be denied without an evidentiary hearing because he has failed, as a threshold matter, to adequately demonstrate his inability to afford his counsel of choice as required by the Eleventh Circuit's decision in *United States v. Kaley*. In *Kaley*, the Government points out that "a defendant whose assets are restrained pursuant to a criminal forfeiture charge in an indictment, rendering him unable to afford counsel of choice, is entitled to a pretrial hearing *only* if the balancing test enunciated in *Barker v. Wingo,* 407 U.S. 514 (1972), is satisfied."[2]  *Kaley*, 579 F.3d at 1252 (citing *United States v. Bissell,* 866 F.2d 1343, 1353 (11th Cir. 1989)).  Once the Defendant demonstrates financial need and the inability to retain counsel, the Government argues that the court may then apply the *Barker* test to determine whether a post-indictment hearing is warranted.

As further support, the Government relies on the Tenth Circuit's decision in *United States v. Jones*, where the Court explained that a defendant must demonstrate that he has no assets to retain private counsel in order to qualify for a pre-trial hearing:

> We think the proper balance of private and government interests requires a post-restraint, pre-trial hearing but only upon a properly

---

[2]  The *Barker* factors include the following: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.  "[A]fter weighing the four *Barker* factors, the district court *may* grant the defendant's request for a pretrial evidentiary hearing in order to determine whether assets described in the forfeiture count of the indictment were wrongly seized (or placed under the restraint of a protective order)."  *Kaley*, 579 F.3d at 1257 (emphasis in original).

14

>   supported motion by a defendant. Due process does not automatically require a hearing and a defendant may not simply ask for one. As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family. The need for this requirement is obvious. If a defendant fails to persuade the court on this point, then the private interest of the *Mathews* calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing.

*Jones*, 160 F.3d at 647 (citations omitted); *accord United States v. Farmer,* 274 F.3d 800, 803 (4th Cir. 2001) ("[D]ue process requires a pretrial adversary hearing when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and that he has no other funds from which to secure the counsel of his choice.").

The Government's response is well taken as it is settled law that "a defendant must 'show a bona fide need to utilize [seized] assets . . . to conduct his defense' in order to be entitled to a hearing." *Farmer*, 274 F.3d at 804 (quoting *United States v. Kirschenbaum,* 156 F.3d 784, 792 (7th Cir. 1998) (internal quotation omitted)). Here, the Defendant has three lawyers currently handling his criminal case and has failed to provide any proof of his net worth to the Court. Defendant has not proffered any verified financial affidavits for himself in support of his Motion and no banking statements that show a lack of available assets. Complete financial disclosure requires that the Defendant identify his assets, liabilities, sources of income, net worth, whether he has access to financial accounts, and the expected costs of his defense team. *See United States v. Bonventre*, 720 F.3d 126, 133 (2d Cir.

15

2013) ("Bonventre did not disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses. While the affidavits describe the aggregate balances of bank accounts enumerated in the government's submissions, they do not clarify whether Bonventre has access to other accounts and, if so, their value."). But, Defendant has provided none of the above nor any indication of his unrestrained assets.

Furthermore, a court may inquire into the finances of family members when assessing financial need. For example, in the Seventh Circuit's decision in *Kirschenbaum*, a defendant seeking the release of restrained funds submitted a bare-bones affidavit with no information regarding his family's ability to pay for his counsel. The district court repeatedly inquired into whether friends or family might be able to fund the defense team and the defendant ultimately failed to provide any evidence. On this record, the district court held – and the Seventh Circuit affirmed – that the defendant had failed to show a bona fide need to use restrained assets to assist with his defense.

Here, Defendant has failed to inform the Court that he has any financial need, including any income generated by his family members. The Defendant's sister and her husband can purportedly help pay for defense counsel from income obtained through the Defendant's former company. The Defendant's sister and her husband allegedly continue to run a hydroponics company under the name of TD Supply. The Government notes that, according to Currency Transaction Reports filed with

16

the Treasury Department, TD Supply has deposited approximately $1,450,000 in currency in the past eleventh months. As such, Defendant has failed to explain why TD Supply – or any his family members for that matter – are unable to help pay for defense costs.

To the extent Defendant intends to provide the requisite support for an evidentiary hearing, he must provide more than the mere conclusory allegations that he lacks sufficient funds to retain his counsel of choice. Any submission should be highly detailed and address all of the aforementioned points described above. Therefore, at this time, there is simply no basis to find that Defendant has any financial need to warrant an evidentiary hearing and Defendant's Motion should be **DENIED**. *See Farmer,* 274 F.3d at 804 (If defendant does not make "a threshold showing that [he] is without funds to hire the attorney of his choice," he has no due process right to a *Monsanto* hearing); *Jones,* 160 F.3d at 647 (Defendant must show both that "she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family" and that there is a "bona fide reason to believe the grand jury erred in determining that the restrained assets" are subject to forfeiture); *United States v. Michelle's Lounge,* 39 F.3d 684, 695 (7th Cir. 1994) (*Monsanto* hearing held only "if the district court finds that the defendant has no other assets with which to hire his attorney of choice"); *United States v. Egan,* 2010 WL 3000000, at *5 (S.D.N.Y. July 9, 2010) ("[A]s a condition precedent to a pre-trial hearing, there must be some showing that the restrained funds are

necessary to fund a legal defense. [*Monsanto* ] cannot be read to suggest that due process requires a hearing whenever a defendant merely prefers to use restrained funds rather than untainted assets to pay his counsel of choice.").

### C. *The Eighth Amendment Prohibition against Excessive Fines*

Defendant's final argument is that the Excessive Fines Clause of the Eighth Amendment compels the immediate release of $21 million in cash seized pursuant to state and federal search warrants. *See* U.S. Const. Amend. VIII. "In deciding whether a claim is ripe for adjudication or review, we look primarily at two considerations: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149 (1967)).

On the first consideration, "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Cheffer*, 55 F.3d at 1523; *see also 18 Unnamed "John Smith" Prisoners v. Meese,* 871 F.2d 881, 882–83 (9th Cir. 1989) (Eighth Amendment challenge to proposed double bunking plan as cruel and unusual punishment not ripe); *Askins v. District of Columbia,* 877 F.2d 94, 97–99 (D.C. Cir. 1989) (challenge to proposed transfer to another prison facility not ripe). In this case, Defendant has not pled or been found guilty. And the Defendant has not admitted, or otherwise stipulated to any facts, that could inform the Court's determination regarding

18

excessiveness. In other words, the nature and extent of Defendant's criminality has not yet been demonstrated and the Eighth Amendment's prohibition against excessive fines cannot be calculated at this point. *See, e.g.*, *United States v. Diamond Casino Cruise, LLC*, 2013 WL 54001, at *1 (S.D. Ga. Jan. 3, 2013), *Report and Recommendation adopted*, 2013 WL 220876 (S.D. Ga. Jan. 18, 2013) ("Diamond Casino has yet to be found guilty of any offense; nor has the nature and extent of any criminality on its part been determined. Thus, the Court is not able to make the proportionality assessment contemplated by *Bajakajian* at this time."). As such, the general rule applies in that "challenges under the Excessive Fines Clause are . . . generally not ripe until the actual, or impending, imposition of the challenged fine." *Cheffer*, 55 F.3d at 1523 (citing *United States v. Fleetwood Enterprises,* 689 F. Supp. 389, 392 (D. Del. 1988) (challenge to Eighth Amendment constitutionality of potential fines under Manufactured Housing Act not ripe for adjudication where defendant had been charged under the Act but fines had not yet been imposed by the court)).

Accordingly, Defendant's Motion on this basis should be **DENIED** because his Eighth Amendment challenge must wait until his criminality is established – through trial or a plea – and the punishment of forfeiture is imposed or is about to be imposed. *See United States v. Talebnejad,* 460 F.3d 563 573, (4th Cir. 2006); *United States v. Wommer,* 2011 WL 5117874 at *7 (D. Nev. Oct. 27, 2011).

19

### *III.     CONCLUSION & RECOMMENDATION*

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Release Seized Assets [D.E. 65] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of June, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge